IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AIRIGAN SOLUTIONS, LLC,

                  Plaintiff,

v.

ABAGAIL, *et al.*,

               Defendants.

Civil Action No. 19-503

**FILED UNDER SEAL**

## 1) TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING ASSETS AND MERCHANT STOREFRONTS; 3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND 4) ORDER AUTHORIZING EXPEDITED DISCOVERY

On this day the Court considered Plaintiff's *Ex Parte* Application for the following: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against all of the Defendants identified on the attached **Schedule "A"**, Amazon Services, Inc. and Amazon Payments, Inc. in light of Defendants' intentional and willful offerings for sale and/or sales of Counterfeit Products (as defined *infra*) ("Application") Having reviewed the Application, the Declarations of Margaret B. Tyler, Brian Samuel Malkin, Stanley D. Ference III, and Amy Cline, along with the exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

### FACTUAL FINDINGS & CONCLUSION OF LAW

1.      Plaintiff is likely to prevail on its Lanham Act claims, patent claims, and related state law claims at trial;

2.      As a result of Defendants' infringements, Plaintiff as well as consumers are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

a. Defendants have offered for sale and sold substandard products bearing or using Plaintiff's registered trademark (*i.e.,* U.S. Trademark Reg. No. 5,142,630 for the wordmark "NEGG") and/or that use packaging that bears and/or is used in connection with marks and/or trade dress (hereinafter referred to as the "NEGG Marks) that is confusing or substantially similar to Plaintiff's authentic products sold using the NEGG Marks ("NEGG Products") and/or that infringe at least Claim 1 of Plaintiff's U.S. Patent No. 9,968,211 entitled "PERSONAL EGG PEELER" (hereinafter referred to as "the '211 patent") (collectively referred to as, "Counterfeit Product(s)" or "Infringing Product(s)") that overall infringe the NEGG Marks and/or at least Claim 1 of the '211 patent through accounts with the online marketplace platform Amazon.com, by Defendants ("User Account[1](s)");

b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for its NEGG Products; and

c. Plaintiff has well-founded fears that if it proceeds on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the

---

[1] As defined in the Application, a "User Account" is any and all accounts with online marketplace platforms Amazon.com, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other persons in active concert with any of them.

NEGG Marks and/or at least Claim 1 of the '211 patent, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the NEGG Marks and/or at least Claim 1 of the '211 patent, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) secret, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing NEGG Marks and/or at least Claim 1 of the '211 patent and records relating thereto that are in their possession or under their control and/or (iv) open new User Accounts through which Defendants, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in products, including Counterfeit Products ("Merchant Storefront(s)[2]") under new or different names and to continue to offer for sale and sell Counterfeit Products with little to no consequence;

3.      The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the NEGG Marks and to its reputation if a temporary restraining order is not

---

[2]   As defined in the Application, a "Merchant Storefront" is any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.

issued; in the absence of a temporary restraining order Plaintiff would be forced to compete against its own patented invention, a situation that places a substantial hardship on a patentee;

4.      Public interest favors issuance of the temporary restraining order in order to protect Plaintiff's interests in and to its NEGG Marks and its patented invention and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit products as NEGG Products.

5.      Plaintiff has not publicized its request for a temporary restraining order in any way.

6.      Service on Defendants via electronic means is reasonably calculated to result in proper notice to Defendants.

7.      This Court has the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity.  In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiff seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

8.      If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the NEGG Marks and at least Claim 1 of the '211 patent. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order.  It typically takes Financial Institutions a minimum of five (5) days to locate, attach and freeze

Defendants' Assets (as defined *infra*) and/or Defendants' Financial Accounts (as defined *infra*) and it is not unusual for the Third Party Service Provider (as defined *infra)* operating the online marketplaces a minimum of two (2) weeks to freeze Defendants' Merchant Storefronts.  As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and the Third Party Service Provider with this Order and for the Financial Institutions and/or the Third Party Service Provider to comply with the Paragraphs I(B)(1) through I(B)(2) and I(C)(1) of this Order, respectively, before requiring service on Defendants.

9.      Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products.  Therefore, Plaintiff has good cause to be granted expedited discovery.

## ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows (the "Order"):

### I. Temporary Restraining Order

A.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained as follows:

(1) from manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

(2) from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or any money, securities or other property or assets of Defendants (hereinafter collectively referred to as "Defendants' Assets") and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

(3) effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order;

(4) each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue use of any marks that are confusingly similar with the Plaintiff's NEGG ® trademark, within metatags or other markers within website source code, from use on any web page (including as the title of any product listing), from any advertising links to other websites offering Counterfeit Products for sale, from search engines' databases or cache memory, and any other form of use such that the NEGG ® trademark or a confusingly similar mark are visible to a computer user or

serves to direct computer searches to a Merchant Storefront registered, owned, or operated by each Defendant, including the Merchant Storefronts operating under the Seller IDs;

(5) each Defendant shall not transfer ownership of the User Accounts or Merchant Storefronts associated with the Seller IDs;

(6) each Defendant shall preserve copies of all computer files relating to the use of any User Accounts and/or Merchant Storefronts under the Seller IDs and shall take steps necessary to retrieve computer files relating to the use of the User Accounts and/or Merchant Storefronts under their Seller IDs that may been deleted before the entry of this Order;

(7) upon receipt of the notice of this Order, Amazon Payments, Inc. ("Amazon"), and its related companies and affiliates, shall immediately identify and restrain all funds, as opposed to ongoing account activity, in the Amazon accounts related to the Defendants as identified on Schedule "A" hereto, as well as all funds in or which are transmitted into (i) any other accounts of the same customer(s); (ii) any other accounts which transfer funds into the same financial institution account(s), and/or any of the other Amazon accounts subject to this Order; and (iii) any other Amazon accounts tied to or used by any of the Seller IDs identified on Schedule "A" hereto[3];

(8) Amazon shall immediately divert to a holding account for the trust of the Court all funds in all Amazon accounts related to Defendants identified in Schedule "A" hereto, and associated payment accounts, and any other accounts for the same customer(s) as well as

---

[3]   This Order contemplates that discovery may reveal that Defendants may have used other user accounts, operated by other Third Party Service Providers Financial Institutions other than Amazon and that any additional discovered Third Party Service Providers and Financial Institutions, once identified and provided with notice, shall be subject to the discovery, restraints, and injunctions set forth in this Order.

any other accounts which transfer funds into the same financial institution account(s) as any other Amazon accounts subject to this Order;

(9) Amazon shall further, within five (5) business days of receiving this Order, provider Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into financial account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account holders, until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by Amazon for any purpose (other than pursuant to a chargeback made pursuant to Amazon's security interest in the funds) without express authorization of this Court;

(10) this Order shall apply to the Seller IDs, associated Accounts and Merchant Storefronts, and any other seller identification names, Accounts or Merchant Storefronts, or Amazon accounts which are being used by Defendants for the purpose of counterfeiting the NEGG products at issue in this action and/or unfairly competing with Plaintiff;

(11) Amazon or any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(12) this Order shall remain in effect until the date for the hearing to show cause why a preliminary injunction should not be issued as set forth below, or until such further dates as set by the Court or stipulated by the parties;

B.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that Amazon is hereby restrained and enjoined from engaging in any of the following acts or omissions pending the hearing and determination of Plaintiff's Application for a preliminary injunction, or until further order of the Court:

> secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to financial accounts associated with or utilized by any Defendant or any Defendant's User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts") until further ordered by this Court;

C.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that Amazon is hereby restrained and enjoined from engaging in any of the following acts or omissions pending the hearing and determination of Plaintiff's Application for a preliminary injunction, or until further order of the Court:

> (1) within (5) days after receipt of service of this Order, providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts;

> (2) processing payments for any products listed under the following Amazon Standard Identification Numbers (ASINs):  B01N7SXX0W (black NEGG®), B01MT9U0HK (red NEGG®), B01NATZUY2 (white NEGG®), B01N235WK4 (yellow NEGG®), B079P5N8Q6 (pink NEGG®), B079P6QVNR (fuschia NEGG®), and B079P4HPVM (green NEGG®), by any Seller that has not been authorized by Plaintiff; contemporaneously with the service of this Order, Plaintiff shall provide notice to Amazon of Plaintiff's authorized sellers; and

(3) Amazon shall place the following Amazon Standard Identification Numbers (ASINs): B01N7SXX0W (black NEGG®), B01MT9U0HK (red NEGG®), B01NATZUY2 (white NEGG®), B01N235WK4 (yellow NEGG®), B079P5N8Q6 (pink NEGG®), B079P6QVNR (fuschia NEGG®), and B079P4HPVM (green NEGG®), into Amazon's gating program, so that Plaintiff will be able to control which sellers list product under these ASINs.

## II. Order to Show Cause Why a Preliminary Injunction
## Should Not Issue and Order of Notice

A. Defendants are hereby ORDERED to show cause before this Court in the United States District Court for the Western District of Pennsylvania, the U.S. Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania in Courtroom No. 5B on the **10th day of May, 2019 at 1:30 p.m.** or at such other time that this Court deems appropriate, why a preliminary injunction, pursuant to FRCP 65(a), should not issue.

B. IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Ference & Associates LLC at 409 Broad Street, Pittsburgh, Pennsylvania 15143 before **May 7, 2019**. Plaintiff shall file any Reply papers on or before **May 9, 2019 at 12:00 p.m.**

## III. Order Authorizing Expedited Discovery

A.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

(1)     Plaintiff may propound interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and Defendants, their respective officers, employees, agents, servants and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of this Order, shall provide written responses

under oath to such interrogatories within fourteen (14) days of service to Plaintiff or Plaintiff's counsel.

(2)     Plaintiff may serve requests for the production of documents pursuant to FRCP 26 and 34, and Defendants, their respective officers, employees, agents, servants and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of this Order, shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

(3)     Plaintiff may serve requests for admission to FRCP 26 and 36, and Defendants, their respective officers, employees, agents, servants and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of this Order, shall provide written responses under oath to such requests within fourteen (14) days of service to Plaintiff or Plaintiff's counsel.

B.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

Within fourteen (14) days of receiving actual notice of this Order, Amazon shall provide to Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

a.     any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts

that Defendants have ever had and/or currently maintain with the respective Third

Party Service Provider;

b. the identities, location and contact information, including any and all e-mail

addresses of Defendants that were not previously provided;

c. the Defendants' methods of payment, methods for accepting payment and any and

all financial information, including, but not limited to, information associated

with Defendants' User Accounts and Defendants' Merchant Storefronts, a full

accounting of Defendants' sales history and listing history under such accounts

and Defendants' Financial Accounts associated with Defendants' User Accounts

and Defendants' Merchant Storefronts; and

d. Defendants' manufacturing, importing, exporting, advertising, marketing,

promoting, distributing, displaying, offering for sale and/or selling of Counterfeit

Products, or any other products bearing the NEGG Marks and/or marks that are

confusingly similar to, identical to, and constitute an infringement of the NEGG

Marks and/or infringed at least claim 1 of the '211 patent.

### V. Security Bond

IT IS FURTHER ORDERED that Plaintiff shall place security (corporate surety bond,

cash, certified check, or attorney's check) in the amount of $5,000.00 Dollars (five thousand

dollars) with the Court, which amount is determined adequate for the payment of any damages

any person may be entitled to recover as a result of an improper or wrongful restraint ordered

hereunder.


**SO ORDERED.**

SIGNED this 2nd day of May, 2019, at 2:00 p.m.
Pittsburgh, Pennsylvania


_s/Nora Barry Fischer_
UNITED DISTRICT JUDGE